CHARLES A. PERRY ET AL.
*vs.*
INHABITANTS OF THE TOWN OF LINCOLNVILLE,
MALCOLM E. JOY, ALLEN M. MORTON, AND
RAYMOND MILLER

Waldo.   Opinion, August 28, 1953.

*Charles A. Perry,* for plaintiff.

*David A. Nichols,* for defendant.

SITTING: MERRILL, C. J., THAXTER, WILLIAMSON, TIRRELL, JJ. MURRAY, A. R. J. FELLOWS, J., did not sit.

MERRILL, C. J. On appeal. This is a bill in equity brought to have tax liens placed by the town of Lincolnville upon the homestead lot of the plaintiff, Charles A. Perry, and upon another parcel of land owned by the plaintiffs, Charles A. Perry and Frank C. Perry, as joint tenants, declared illegal and void and to restrain the town from acquiring or asserting title thereunder. The bill also indirectly seeks an abatement of the taxes through a prayer that the court, "after viewing it determine the equitable value of the plaintiff's property as provided in the constitution of the State of Maine."

Hearing was had on the bill before a Justice of the Supreme Judicial Court sitting in equity. He made a finding that the lien on the joint property was void on account of an insufficient description. He made a finding sustaining the validity of the lien on the individual property of Charles A. Perry. After the findings were filed, the town discharged the lien on the jointly held property. Reciting this discharge the justice entered a final decree dismissing the bill. From this final decree both plaintiffs appealed. The case is now before this court on the appeal.

The tax lien upon the jointly owned property now having been discharged, that lien need not be considered on the appeal.

If a resident taxpayer's property is over valued, his only remedy is by abatement. *Stickney* v. *Bangor,* 30 Me. 404; *Terminal Company* v. *City of Portland,* 129 Me. 264; *Hemingway* v. *Machias,* 33 Me. 445; *Gilpatrick* v. *Inhabitants of Saco,* 57 Me. 277.

In this State proceedings to abate taxes cannot be commenced by a bill in equity. Neither the Supreme Judicial Court nor the Superior Court sitting in equity has authority to abate taxes, that is, relieve from an over valuation of the property assessed. The power to abate taxes in the first instance is in the Board of Assessors upon application therefor. From their decisions appeals may be taken to the County Commissioners, from whose decision an appeal may be made to the Superior Court, or appeals may be taken directly from the Assessors to the Superior Court. See R. S. (1944), Chap. 81, Secs. 39 to 46, inclusive. These statutory provisions are exclusive. The appeals are entered in the Superior Court on the law side of the court, and may be brought forward to this court on exceptions in the manner provided in the statutes.

We hold that the bill states no ground upon which the equity court has jurisdiction to determine the equitable value of the plaintiffs' property or to grant any relief in the nature of an *abatement* of the taxes as assessed thereon. Nor has the plaintiff, Charles A. Perry, stated any ground sustained by the record which would authorize a court of equity to declare the tax lien filed against his property illegal or void, or which would authorize the court to restrain the town from acquiring or asserting title thereunder.

He attacks the validity of the lien on two grounds, (1) the illegality of the election of the Board of Assessors who assessed the tax, and the consequent invalidity of their acts, they being, as he alleges, only *de facto* officers, and (2) the insufficiency of the description of his property in the assessment list and in the lien notice.

He bases the claimed invalidity of the election of the assessors upon the following facts. The town of Lincolnville held a so-called annual meeting in the month of March, 1950, within the time therefor provided by statute. The warrant as posted calling the meeting was fatally defective. It was

not manually signed by the selectmen issuing the same, and it was directed to one of the selectmen issuing the same as a constable. He claims that the assessors elected at that meeting, which was illegally called, were at best *de facto* assessors. This contention we sustain. However, the situation having been discovered, the defendant town proceeded to hold another town meeting on April 8, 1950. This meeting was duly called and the same persons as before became the assessors. The plaintiff attacks the validity of the choice of assessors at this meeting because it was not held in the month of March, as provided by R. S. (1944), Chap. 80, Sec. 12. In this statute it is provided, "Annual town meetings shall be held in March, and the voters shall then choose, by a majority vote, * * * three or more assessors, * * *." It is the position of the plaintiff that this provision specifying the month in which annual meetings shall be held is mandatory, and that the provision that the voters shall "then choose" assessors is likewise mandatory. He further claims that because the assessors were not chosen at a meeting held in the month of March but at a meeting held later, they are only *de facto* officers. These contentions of the plaintiff cannot be sustained.

The foregoing provisions that annual town meetings shall be held in March and that the assessors shall be then chosen are directory, not mandatory. The failure to have a legal meeting in March was not a fatal error on the part of the town. The later meeting was regularly called and there was no "design or fraud" in holding the same. It was called and held because of the illegality of the first meeting. This illegality was due to the inadvertent errors in the method adopted in calling the same. In no sense can the illegality of the first meeting be attributed to "design or fraud." The second meeting was a legal meeting. The action taken thereat was *de jure* and the assessors then chosen were *de jure,* not *de facto* officers of the town. *State* v. *Marcotte et al.,* 148 Me. 45, 89 Atl. (2nd) 308.

After the first; or invalid meeting, the then *de facto* assessors gave the statutory notice to bring in lists of polls and estates as required by R. S. (1944), Chap. 81, Sec. 35. Said lists were to be returned on April 1, 1950. After the second town meeting the assessors who were then *de jure* assessors, gave a second notice to bring in lists of polls and estates. This second notice was dated April 28, 1950 and the lists were to be returned May 4, 1950.

R. S. (1944), Chap. 81, Sec. 35 provides that "Before making an assessment" the assessors shall give "seasonable notice" in writing to the inhabitants to bring in "true and perfect lists of their polls and all their estates real and personal, not by law exempt from taxation, of which they were possessed on the 1st day of April of the same year." This statute does not provide when said notice shall be given other than that it shall be given "before making an assessment" and that it be "seasonable."

The second notice given by the assessors was given seasonably, and given before they made the assessment in question. Furthermore, the assessors who gave the notice were *de jure* assessors. The validity of the lien cannot be successfully attacked on the ground that the assessors were *de facto* officers or that they did not give the notice required by R. S. (1944), Chap. 81, Sec. 35. In this connection we call attention to the fact that failure to give the notice provided for in R. S. (1944), Chap. 81, Sec. 35 does not render an assessment invalid. R. S. (1944), Chap. 81, Sec. 101; *Boothbay* v. *Race,* 68 Me. 351; *City of Rockland* v. *Farnsworth,* 111 Me. 315. The tax in question was legally assessed.

This brings us to the remaining ground asserted against the validity of the lien, viz.: insufficient description of the property assessed to Charles A. Perry. It is extremely doubtful whether the allegations in the bill are sufficient to raise the question of the validity of the lien on the ground of

insufficient description of the property against which it was filed, there being neither direct allegation thereof in the bill nor any allegation of facts from which the nature of the description used in the lien notice can be determined. However, as the justice below received the lien notice in evidence and passed upon its sufficiency, and especially because the question is of great importance in the administration of the tax lien law, we choose to examine the sufficiency of the description contained in the lien notice. We sustain the ruling thereon made by the sitting justice. The description contained in the notice and lien claim is as follows: "Said real estate being bounded and described as follows: recorded in Book 402, Page 448 at Waldo County Registry of Deeds, Belfast, Maine."

The plaintiff, Charles A. Perry, attacks the sufficiency of this description on two grounds, (1) that from the lien claim standing alone it is impossible to identify the land which is made the subject thereof, and (2) that notwithstanding the fact that the record of the deed referred to contains a sufficient description by metes and bounds of the land owned by him, the record referred to in the lien notice is not a deed *to him* but a deed by and in which *he conveyed the described land to another*. Neither ground urged by the plaintiff is tenable.

Although the description of the land assessed must be definite and certain, it is definite and certain within that rule if it refers to something by which it can be made certain. See *Adams* v. *Larrabee*, 46 Me. 516. The rule is laid down in *Inhabitants of Orono* v. *Veazie*, 61 Me. 431 as follows:

"The description of the real estate assessed, in this class of cases, must be certain, or refer to something by which it can be made certain. *Adams* v. *Larrabee*, 46 Maine, 517; Blackwell on Tax Titles, 353; *Haven* v. *Cram*, 1 N.H. 93."

We said in *Greene* v. *Lunt*, 58 Me. 518:

"The assessment must be complete in and of itself as much as a deed or contract. Parol proof may be resorted to for the purpose of applying the terms of the description to the face of the earth, but no further. It cannot supply any deficiency in the buts or bounds. These must be ascertained from what is written and from that alone."

In *Marr* v. *Hobson,* 22 Me. 321 it was held that a description of "a certain tract of land situated in Standish as will appear by deed dated July 3, 1833, and recorded in the Cumberland Registry of Deeds, Book 135, page 292" without reference to the names of the grantors or grantees in the deed was a sufficient description to pass title to all of the premises described in the deed dated and recorded as set forth.

We hold that the description used in the lien notice referring to the volume and page in the Registry of Deeds, on which page there was the record of a deed containing a sufficient description by metes and bounds of the real estate of the plaintiff, Charles A. Perry, is sufficient.

We further hold that the fact that the deed which is recorded was a deed from the plaintiff, Charles A. Perry, to another in no way invalidates the description in the lien notice. Land which a man *now* owns may be as well described in a lien notice by referring therefor to the record of a deed by which he has previously conveyed the land away as by referring to the deed by which he has reacquired the same. The deed by which he conveyed the same away might, as did the deed in this case, contain a description of the land by metes and bounds, while the deed by which he reacquired the same might describe the land by merely referring to the description in the prior deed. In fact, a lien notice would be sufficient if it referred for a description of the land on which the lien is claimed to the record of a deed between strangers.

It is to be noted that the reference to the record in the lien notice is silent as to the parties to the deed. The record was not referred to in this lien notice as stating, or as evidence of the title of the plaintiff, Charles A. Perry, to the land against which the lien was filed. It was referred to merely for the purpose of describing the land.

We hold that when the purpose of describing real estate assessed for taxation reference is made "in the inventory and valuation upon which the assessment is made" and in the notice and claim of lien to a record in the Registry of Deeds for the county in which the land lies by volume and page, such reference is a sufficient description of said real estate and meets the requirements of R. S. (1944), Chap. 81, Sec. 97 with respect thereto, *provided and upon condition that the record referred to contains a description of the real estate sufficiently accurate to identify it*. Measured by these standards, the lien notice here in question filed against the individual real estate of Charles A. Perry was sufficient.

The appeal must be dismissed and the decree below dismissing the bill affirmed and the case remanded to the court below for a decree dismissing the bill.

*So ordered.*